**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ )<br>MARSHALL C. DANIELS, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>UNITED STATES, )<br> )<br>Defendant. )<br>_____) | Civil Action No. 12-0485 (ABJ) |

<u>**MEMORANDUM OPINION**</u>

Marshall C. Daniels brings this action against the United States, challenging an order of the Assistant Secretary of the Navy for Manpower and Reserve Affairs ("Navy") that discharged him from the United States Naval Academy and required him to reimburse the United States for the educational benefits he received.  Daniels claims that the discharge order is invalid because it was premised in part upon an earlier misconduct determination imposed in violation of Naval Academy regulations:  he contends that the earlier disciplinary sanction was inconsistent with the manner in which the Command at the Academy ordinarily applied and enforced its regulations, that the applicable regulation had been "amended" in practice, and that therefore, he was held to an improper standard.  The United States has moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(6) on the grounds that it is not justiciable.  Because "judges are not given the task of running the [Navy]," *Orloff v. Willoughby,* 345 U.S. 83, 93 (1953), the Court agrees that Daniels's claim is not justiciable, and it will grant the motion to dismiss.

**BACKGROUND**

According to the amended complaint in this action, Daniels was appointed to the United States Naval Academy on July 2, 2008, as a student, or "midshipman."  Am. Compl. [Dkt. # 12] ¶¶ 13, 17.  Although he appears to have completed his first year without any significant disciplinary issues, he began a series of encounters with the disciplinary system during his second year.  They culminated in his discharge during his fourth year at the Academy.

I.     **The Naval Academy's Conduct System**

The Commandant of Midshipmen has developed a manual to govern the disciplinary process.  Commandant of Midshipmen Instruction 1610.2E, "Administrative Performance and Conduct System," (March 31, 2011) ("the Conduct Manual"), Ex. 5 to Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. ("Def.'s Mot.") [Dkt. # 14-5].  The manual sets out the rules of conduct for midshipmen (known as the "Conduct System") and the procedures for handling violations.  Violations of the Conduct System are divided into three categories, in order of severity:  minor, major, and 6-K.  Conduct Manual at 1-4.  Depending on the severity of the charged violation, the midshipman's case is adjudicated by the appropriate official, who makes a determination with respect to guilt or innocence and determines the appropriate punishment.  *Id.* at 1-2, 3-4, 4-1–4-8, 5-1.

The manual sets out the number of guilty determinations and/or poor grades a midshipman may receive before he can be considered to be "unsatisfactory."  *Id.* at 6-1–6-2.  When a midshipman becomes unsatisfactory in conduct, his entire record is reviewed to determine whether any additional action is required.  *Id.* at 3-10.  Based upon this review, the Commandant chooses among the following options:  (1) no further action; (2) formal verbal or written counseling; (3) placement on conduct probation and/or remediation; (4) the convening of

a Commandant's hearing for unsatisfactory conduct; or (5) the forwarding of the midshipman's record to an aptitude board for review.  *Id.*

If after conducting an unsatisfactory conduct hearing, the Commandant recommends a midshipman for disenrollment, a case file is prepared for the Superintendent.  *Id.* at 3-10–3-11. Once the case file is prepared, the Navy adheres to the following procedure, which is mandated under 10 U.S.C. § 6962.  First, if the Superintendent of the Navy determines that the conduct of a midshipman is unsatisfactory, he must submit a full report of the facts to the Secretary in writing. *Id.* § 6962(a)(1).  Next, the midshipman must be given an opportunity to examine the report and submit a written statement.  *Id.* § 6962(b).  Finally, if the Secretary believes, on the basis of the report and statement, that the determination of the Superintendent is reasonable and well founded, he may discharge the midshipman.  *Id.*

There is also a concurrent disciplinary system called the "Honor Concept" which pertains only to lying, cheating, and stealing.  *See* Commandant of Midshipmen Instruction 1610.3H, "Honor Concept of the Brigade of Midshipmen" (April 13, 2010) ("Honor Concept"), Ex. 7 to Def.'s Mot. [Dkt. # 14-7].  This system also requires that the procedure set out in 10 U.S.C. § 6962 be followed before a midshipman is discharged from the Naval Academy.  *See* Honor Procedures, Ex. 7 to Def.'s Mot. [Dkt. # 14-7] § 0307(i)–0310.

## II.    Factual Background[1]

According to the amended complaint, Daniels was found in violation of the Honor Concept during his second year at the Naval Academy for cheating on a physics examination.

---

1    The factual recitation is taken from the allegations in the amended complaint, and in accordance with *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (stating that in evaluating a motion to dismiss, a court may consider documents incorporated by reference in the complaint), the Court also refers to where appropriate, the documents specifically referenced in the amended complaint, which are part of the Administrative Record ("AR") [Dkt. # 5].

Am. Compl. ¶ 17.  The Academy permitted Daniels to remain, but it required him to undergo remediation.  Am. Compl. ¶ 19.  Daniels completed his remediation on February 28, 2011.  Am. Compl. ¶ 20.

Daniels's next violation occurred during his third year at the Naval Academy.  Am. Compl. ¶ 21.  He was assigned weekend duty for the weekend of Friday March 4 to Sunday March 6, 2011.  Am. Compl. ¶ 28(a).  According to the amended complaint, Daniels was actually on duty only on Friday and Sunday, and he "was not assigned to do actual duty" on Saturday March 5.  Am. Compl. ¶¶ 28(b), (c).  On the night of Saturday March 5, Daniels signed out, as midshipmen are required to do when they depart from the Naval Academy Grounds, and he went into Annapolis, where he states that he drank three beers.  Am. Compl. ¶¶ 28(d)–(f).  He asserts that he returned to his room and went to bed before midnight.  Am. Compl. ¶ 28(g).

Daniels alleges that his assigned job for Sunday was not supposed to begin until noon, but he was roused out of bed with a number of other midshipmen for a "6:00 a.m. muster."  Am. Compl. ¶¶ 28(h)–(i).  At that point, an Officer detected the smell of alcohol, and breathalyzer tests were administered to all the midshipmen that had been awoken.  Am. Compl. ¶¶ 28(j)–(k).  Daniels's test detected a 0.035 blood alcohol level, which demonstrated alcohol use.  Am. Compl. ¶ 28(k).  Thereafter, on March 11, 2011, Daniels pled guilty to major misconduct in violation of Commandant of Midshipmen Instruction 1601.10E, paragraphs 0100.b and d, which ban alcohol consumption while on duty or within twelve hours of assuming duty.  Am. Compl. ¶¶ 29–30; AR 107.  As a result, Daniels was placed on conduct probation from May 17, 2011 to January 12, 2012.  Am. Compl. ¶¶ 21, 38; *see also* Disposition of Conduct Case #111554, AR 84–85 ("Violation of the terms of your conduct probation may immediately result in a recommendation to the Superintendent that you be separated from the Naval Academy.")

At the start of the next school year, on September 4, 2011, while Daniels was still on probation, he was found in bed with a female midshipman.  Am. Compl. ¶ 22.  This is a conduct violation, and Daniels admitted his guilt.  Am. Compl. ¶¶ 23–24.  After reviewing Daniels's record, the Commandant recommended to the Superintendent of the Naval Academy on September 15, 2011 that Daniels should be disenrolled from the Naval Academy and discharged from the Naval Service,[2] AR 68, and on September 28, 2011, the Superintendent of the Naval Academy provided the same recommendation to the Secretary, AR 67.  *See also* Am. Compl. ¶¶ 26–27.  According to the amended complaint, the female midshipman, who was not on

---

2      In a Memorandum for the Superintendent, the Commandant wrote that after conducting a personal interview with Daniels and reviewing his case file and overall record, as well as his oral statements and the statements of his chain of command and character witnesses, he found that:

> Midshipman Daniels failed to live up to Naval Academy standards most recently by engaging in sexual misconduct onboard the Naval Academy with a female Midshipman.  At the time of this latest offense, Midshipman Daniels was on conduct probation following a major alcohol related offense in March of 2011.  Midshipman Daniels acknowledges fully understanding the terms of his probation and the potential consequences of violating the probation.
>
> . . . Unfortunately, this most recent offense is but the latest in a history of unsatisfactory conduct for Midshipman Daniels, including an honor offense in May 2010, and seven other minor conduct offenses.  This latest offense solidifies a blatant disregard for basic rules and regulations, as well as a tremendous lack of maturity.  Midshipman Daniels has lost the faith and confidence of his chain of command who all recommend separation.  Despite multiple opportunities, Midshipman Daniels has simply failed to conform to the required standards of conduct and to demonstrate an understanding of the qualities necessary to succeed as a commissioned officer.  Given the number of opportunities Midshipman Daniels has already been afforded, the time and effort already dedicated to improving his poor performance, and the limited time remaining before graduation and commissioning, I recommend that Midshipman Daniels be disenrolled from the Naval Academy.

AR 68.

probation at the time of the conduct violation, was retained at the Naval Academy.  Am. Compl. ¶ 27.

On October 12, 2011, Daniels, by counsel, submitted his response to the recommendation. Am. Comp. ¶ 41; *see* AR 73–82. On December 1, 2011, the Secretary of the Navy, through his designee, ordered that Daniels be discharged from the Naval Academy. Am. Compl. ¶ 42; AR 64. Pursuant to 10 U.S.C. § 2005(d)(1), (2), and 37 U.S.C. § 303a(e), he also ordered recoupment of $140,584.61 for educational benefits that Daniels had received. Am. Compl. ¶¶ 6, 42; AR 64.

On January 24, 2012, Daniels paid the United States $3,965.62 pursuant to a demand letter that he received from the Department of Defense, Defense Finance and Accounting Services. Am. Compl. ¶ 7.

### III.   Procedural Background

Daniels filed the original complaint in this action, [Dkt. # 1], on March 27, 2012. After the United States moved to dismiss the complaint for lack of subject matter jurisdiction or, in the alternative, for summary judgment, [Dkt. # 6], Daniels filed an amended complaint, [Dkt. # 12]. By Minute Order, the Court denied the motion to dismiss the original complaint as moot in light of the amended complaint, and stayed the motion for summary judgment pending the resolution of any renewed motion to dismiss the amended complaint. Minute Order (July 18, 2012); *see also* Minute Order (July 19, 2012) (denying plaintiff's motion for extension of time to file a cross-motion for summary judgment and staying briefing and consideration of defendant's motion for summary judgment, as well as the filing and briefing of any cross-motion for summary judgment, pending the briefing and resolution of any motion to dismiss).

Daniels alleges that his discharge from the Naval Academy was improper because the United States Navy failed to follow its own regulations when it placed him on probation for consuming alcohol during his weekend duty on March 4 to 6, 2011.  Am. Compl. ¶¶ 29–38, 43. According to Daniels, while his drinking on a duty weekend fell within the conduct expressly prohibited by the relevant instruction in the Conduct Manual, "this instruction was in practice ignored and not followed by plaintiff's command."  Am. Compl. ¶ 31.  He alleges that as a matter of practice, "[a] different standard was actually employed."  Am. Compl. ¶ 32.  Thus, the gravamen of Daniels's complaint is that the Navy held him to an unfairly harsh standard when it found him guilty of the offense for which he was on probation when he committed the third offense, and that this error invalidates the subsequent discharge.  Daniels posits that if he had not been on probation at the time of the third conduct violation described in the complaint, he would not have been disenrolled from the Academy, discharged from the Navy, and subjected to the recoupment order.  *Id.* ¶¶ 27, 43.

The amended complaint points to the Little Tucker Act, 28 U.S.C. § 1346, and several "money-mandating statutes" – 10 U.S.C. § 2005(d)(1), (2); 37 U.S.C. § 303a(e); and 37 U.S.C. § 203(c) – as the source of this Court's jurisdiction.  *Id.* ¶ 1.  Daniels seeks damages in the amount of $3965.62 along with back pay for the period December 1, 2011 to May 27, 2012, as well as an order that requires the United States to:

- Cease all attempts to collect the remainder of the recoupment amount;

- Readmit Daniels as a midshipmen in the Naval Academy in the class of 2013; and

- Remove all records associated with Daniels's disenrollment and the conduct violation arising out of the events of March 4 to 6, 2011.

Am. Compl. ¶ 44.

On September 18, 2012, the United States filed a motion to dismiss the amended complaint and renewed, in the alternative, its motion for summary judgment.  [Dkt. # 14].  In light of that motion, the Court denied the previous motion for summary judgment as moot, but ordered that the renewed motion for summary judgment would be stayed until after the Court considered and ruled upon the motion to dismiss.  Minute Order (Sept. 19, 2012).  The fully briefed motion to dismiss is now before the Court.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted); *see also Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

A.    Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  "[B]ecause subject-matter jurisdiction is 'an

Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm.*, *Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

B.   Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Id.* at 679, quoting Fed. R. Civ. P. 8(a)(2). A pleading must offer

9

more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.* at 678, quoting *Twombly*, 550 U.S. at 555, and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* In ruling upon a motion to dismiss, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

## ANALYSIS

I.    **The Court has subject matter jurisdiction at least over Daniels's request for back pay because it is based on a money-mandating statute.**

Although the United States moved to dismiss the amended complaint on the grounds that the Court lacks subject matter jurisdiction, it abandoned that argument and conceded subject matter jurisdiction in its reply in support of the motion. Def.'s Reply to Pl.'s Opp. to Def.'s Mot. to Dismiss ("Def.'s Reply") [Dkt. # 20] at 1–2. Even so, an absence of subject matter jurisdiction may not be waived, and a court is obliged to address it *sua sponte* if necessary. *Doe by Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996); *see Morris v. Wash. Metro. Area Transit Auth.*, 702 F.2d 1037, 1040 (D.C. Cir. 1983) (matters casting doubt on federal subject matter jurisdiction may be considered on a court's own motion). This Court agrees that it has subject matter jurisdiction to hear at least Daniels's claim for back pay.

The Tucker Act grants jurisdiction to the District Courts of the United States, concurrent with the Court of Federal Claims, to hear any "civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort," with

some exceptions that are not relevant to this case.  28 U.S.C. § 1346(a)(2).  This provision is commonly referred to as the "Little Tucker Act."  *See Remmie v. Mabus*, 898 F. Supp. 2d 108, 116 (D.D.C. 2012), citing *Randall v. United States*, 95 F.2d 339, 346 (4th Cir. 1996).  Since the Tucker Act is solely a jurisdictional statute, "a plaintiff must identify a separate source of substantive law that creates the right to money damages."  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005).[3]  Courts commonly refer to sources of law that satisfy this requirement as "money-mandating."  *Id.*  "A statute is money-mandating if it 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'"  *Blueport Co., LLC v. United States*, 533 F.3d 1374, 1383 (Fed. Cir. 2008), quoting *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983).  A statute is also considered money-mandating if it grants, either expressly or implicitly, a right to recover damages.  *Id.*

Daniels has cited three statutes that he asserts are money-mandating and cover the damages he seeks.  As to his request for back pay, he cites a provision of the Military Pay Act, 37 U.S.C. § 203(c).  Am. Compl. ¶ 1.  That provision states that a midshipman at the United States Naval Academy is entitled to pay at the monthly rate equal to thirty-five percent of the basic pay of a commissioned officer in the pay grade *O*-1 with less than two years of service.  37 U.S.C. § 203(c).  This provision has been held by the Court of Federal Claims in at least one case to be money-mandating.  *See Golding v. United States*, 48 Fed. Cl. 697, 715 (2001).  Moreover, the provision has the same structure as another provision of the Military Pay Act, 37 U.S.C. § 204, which sets out the basic pay to which a member of a uniformed service on active duty is entitled, and which is well established as money-mandating.  *Miglionico v. United States*, 108

---

[3]    Federal Circuit precedent regarding the Little Tucker Act is binding on this Court because claims under the Little Tucker Act may only be appealed to the Federal Circuit.  *See* 28 U.S.C. § 1295(a)(2); *Kline v. Cisneros*, 76 F.3d 1236, 1239 (D.C. Cir. 1996).

Fed. Cl. 512, 519–20 (2012), citing *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006);
*Palmer v. United States*, 168 F.3d 1310, 1314 (Fed. Cir. 1999); *see also Heisig v. United States*,
719 F.2d 1153, 1155 (Fed. Cir. 1983) ("It is settled law that claims for military pay and
allowances are actionable under the Tucker Act . . . .").

As to Daniels's request for the amount he has paid pursuant to the recoupment order, he
cites 10 U.S.C. § 2005(d)(1), (2), and 37 U.S.C. § 303a(e).  Am. Compl. ¶ 1.  According to
Daniels, these statutes are money-mandating because they require a midshipman who is
discharged from the Naval Academy and Navy to repay to the United States an amount equal to
the benefit he received from the United States – in this case, the cost of tuition, room, and board.
Mem. in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Opp.") [Dkt. # 18] at 5–6.  Since 10 U.S.C.
§ 6979(a) prohibits the government from charging a midshipman for tuition, room, and board at
the Naval Academy, Daniels argues, the only reason he was required to pay that amount was
because of his discharge from the Naval Academy and Navy.  *Id.* at 6.  For that reason, he
argues, 10 U.S.C. § 2005(d)(1), (2), and 37 U.S.C. § 303a(e), together mandate compensation for
the amount of money in tuition, room, and board that he was required to repay.  *Id.* at 6–7.

There appears to be no case law addressing whether these provisions are money-
mandating, and it is not necessarily a straightforward question.  However, the Court need not
reach that question because it has already determined that it has jurisdiction over at least some

portion of Daniels's cause of action based on his request for back pay, and therefore, it must go on to address the question of whether Daniels's claim is justiciable.[4]

## II.    Daniels's claim is not justiciable.

"Even where a court possesses jurisdiction to hear a claim, it may not do so in cases where the claim presents a nonjusticiable controversy – i.e., the claim is such that the court lacks 'ability to supply relief.'"  *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir. 1995), quoting *Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993).   "Justiciability is a particularly apt inquiry when one seeks review of military activities," *Murphy,* 933 F. 2d at 872; "[t]he military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."  *Id.*, quoting *Orloff v. Willoughby*, 345 U.S. 83, 93–94 (1953).

On that point, the law in this Circuit is clear and unequivocal:

> The Constitution vests "[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force" exclusively in the legislative and executive branches.

*Kreis v. Sec'y of the Air Force,* 866 F.2d 1508, 1511 (D.C. Cir. 1989), quoting *Gilligan v. Morgan,* 413 U.S. 1, 10 (1973); *see also Adkins,* 68 F. 3d at 1322 ("The merits of a service

---

4       Because the total amount of damages that plaintiff seeks – $3965.62 for educational expenses that he paid subject to the recoupment order and approximately $5,919.40 in back pay – is less than $10,000, the Little Tucker Act vests this Court with jurisdiction.  The Court, however, has significant doubts about whether it has jurisdiction over Daniels's equitable claims since under the Tucker Act, the court has no jurisdiction to grant equitable relief unless the equitable relief is "incidental to and collateral to a claim for money damages."  *Anderson v. United States*, 85 Fed. Cl. 532, 538 (2009), quoting *Bobula v. DOJ*, 970 F.2d 854, 859 (Fed. Cir. 1992).  It is not obvious to the Court that the equitable relief Daniels seeks is "incidental to and collateral to" his claim for money damages, particularly his requests for readmission to the Naval Academy and the removal of all records associated with his disenrollment.  *See* Am. Compl. ¶ 44(b).

secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review."); and *Heisig*, 719 F.2d at 1156 ("[R]esponsibility for determining who is fit or unfit to serve in the armed services is not a judicial province . . . .").

If one applies those principles, Daniels's claim appears to be plainly nonjusticiable. It asks this Court to inject itself in military matters, second guess a disciplinary sanction imposed by the Commandant at the U.S. Naval Academy, and to overturn a military personnel decision on its merits.

Daniels maintains, though, that his case falls outside of the general rule, and he points out that courts have been willing to hear cases where the litigant claimed that the military had failed to comply with its own regulations. As the *Adkins* opinion sets out, there are some narrow circumstances in which courts will review this type of claim: "[A]lthough the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy." *Adkins*, 68 F.2d at 1323. That is because "by their nature the procedures limit the military's discretion." *Murphy*, 993 F.2d at 873. Daniels submits that he is making a justiciable challenge here because he is alleging that the Navy applied the wrong standard to his conduct. The Court disagrees.

Daniels's claim falls squarely within the class of cases that are not justiciable. He argues that the government was wrong to discharge him from the Naval Academy after his third conduct violation because the second violation – the alcohol incident – was wrongly decided. Am. Compl. ¶¶ 35–36. According to Daniels, his Command did not enforce the rule against consumption of alcohol while on duty as written, but it operated under a modified version of the rule. *Id.* So, Daniels claims, it was improper for the Navy to hold him to the rule as written. At

bottom, then, Daniels is arguing that the Navy did not have valid substantive grounds to find him guilty of consumption of alcohol while on duty.  He is not alleging that the government failed to provide him with any of the procedural safeguards to which he was entitled at any point in these disciplinary episodes.  Thus, this case does not present a due process claim or a challenge to the procedure followed by the Navy in rendering its decision:  it is solely an attack on the second misconduct finding on the merits.[5]

In his brief, Daniels cites a body of authority in support of the inarguable proposition that this Court is often called upon to review whether an executive agency has followed its own substantive regulations.  But the cases that Daniels cites in which the courts reached the merits are distinguishable because those courts were not reviewing decisions of military organizations.  *See, e.g.*, *Morton v. Ruiz*, 415 U.S. 199 (1974) (Department of Interior); *Service v. Dulles*, 354

---

5       If the Court were to hear the matter, there would be serious impediments to Daniels's claim that neither party seems to have grappled with to date.  First of all, Daniels *pled guilty* to the drinking on duty misconduct charge.  AR 86–87, 107, 377–81.  While the record reflects that he presented evidence in support of his contention that midshipmen in his class were in fact permitted to drink at certain hours during duty weekends notwithstanding the written instruction, AR 93–103, that evidence was contested, AR 91–92, and in the end, the finding of guilt on the 6K violation that formed the basis for the probationary sentence was predicated on a plea.  AR 84–87.  (Based on his claim that he was confused about the applicable rules, it was recommended that another, lesser charge be changed to reflect negligent, rather than intentional violation of an order.  AR 86–87.)  There is no indication that, having admitted his guilt, Daniels challenged or appealed his conviction through any of the procedures that would have been available to him.  *See, e.g.*, Conduct Manual at 3-8–3-9.  Therefore, it seems to the Court that there is a serious question as to whether his right to challenge the use of the written regulation as the measure for his conduct has been waived.

Second, this lawsuit does not challenge the alcohol conviction:  it asks the Court to overturn the discharge.  Whether or not the misconduct finding underlying Daniels's probationary status was fair or flawed, Daniels does not dispute the fact that he knew he was on probation in September, that the misconduct with the female midshipman constituted a violation of that probation, and that a violation of probation could result in his separation from the Academy.  *See* AR 68, *see also* AR 84–85 (statement signed by Daniels that states the length and terms of his probation, and enumerates the types of conduct that constitute violations of the terms of probation).

U.S. 363 (1957) (Department of State); *Mass. Fair Share v. Law Enforcement Assistance Admin.*, 758 F.2d 708 (D.C. Cir. 1985) (Law Enforcement Assistance Administration); *Nat'l Small Shipments Traffic Conference, Inc. v. ICC*, 725 F.2d 1442 (D.C. Cir. 1984) (Interstate Commerce Commission); *Doe v. Hampton*, 566 F.2d 265 (D.C. Cir. 1977) (United States Civil Service Commission).[6]

Courts have found challenges to military personnel decisions to be justiciable only in those limited circumstances where the plaintiff was challenging the procedure that the military employed in its decision-making process. *See, e.g.*, *Adkins*, 68 F.3d at 1325 (finding the plaintiff's claim for back pay to be justiciable because the plaintiff argued that the Secretary improperly considered material outside the record in deciding not to promote him and that he was denied notice and an opportunity to rebut that evidence); *Scarseth v. United States*, 46 Fed. Cl. 406, 413 (2000) (finding the plaintiff's claim for back pay to be justiciable because the plaintiff alleged that in discharging him, the General Court-Martial commander did not comply with the regulation that required him to review the plaintiff's case for the voluntariness of his resignation, and that no person "properly counseled plaintiff regarding any of the required elements outlined in [the relevant Army regulations]"); *Haselrig v. United States*, 53 Fed. Cl.

---

6    Daniels also cites *Ortiz v. Sec'ry of Defense*, 41 F.3d 738 (D.C. Cir. 1994), for the proposition that even a challenge to the Pentagon's compliance with its own regulations is justiciable. However, the claim in that case was different than the claim at issue here because the plaintiff in *Ortiz* sought retirement benefits based on his challenge to the decision of a military board denying his request for a change in his discharge status. *Ortiz*, 41 F.3d at 739. Retirement benefits cases are routinely distinguished from personnel cases, like the instant case, because the issue in benefits cases "is not the composition of the military, but the society's legal obligations to those who are no longer within the military forces." *Fisher v. United States*, 402 F.3d 1167, 1182 (Fed. Cir. 2005). In addition, *Ortiz* presented a claim for equitable relief under the Administrative Procedure Act's arbitrary and capricious review provision, not a claim for money damages under the Tucker Act. So, in that case the Court had jurisdiction to adjudicate the equitable claim under the arbitrary and capricious provision of the Administrative Procedure Act, whereas here, the Court has significant doubts about whether it has jurisdiction over Daniels's equitable claims. *See* note 4 supra.

111, 120 (2002) (finding the plaintiff's claim for back pay to be justiciable because the plaintiff alleged that in denying his promotion, the Air Force Special Selection Board did not make certain determinations that it was required by regulation to make and did not "replicate central selection boards . . . to the maximum extent possible" as it was required by regulation to do); *Bond v. United States*, 47 Fed. Cl. 641, 651 (2000) (finding that the plaintiff's challenge to his military duty assignment was justiciable because the plaintiff alleged that the military did not follow the classification scheme that it was required by regulation to follow).  In each of these cases, the plaintiff invoked a particular statute or regulation that provided mandatory rules or guidelines for the military to follow, and alleged that the military failed to follow them in his case.  The courts were able to adjudicate those claims because the decision did not involve any improper exercise of discretion reserved for the military, but merely required the court to "determine[] whether the procedures were followed by applying the facts to the statutory or regulatory standard." *Murphy*, 993 F.2d at 873.

But this case does not present any kind of procedural challenge.  First of all, the lawsuit challenges the disenrollment and discharge – not the alcohol conviction – and Daniels does not allege that the Navy failed to abide by its own regulations in making the discharge decision or that he was not accorded any of the rights that should have attached at that proceeding.  Second, even if his challenge to the discharge itself can be deemed to be tantamount to a challenge to all of the underlying conduct violations upon which it was based, Daniels does not claim that his disciplinary hearing on the alcohol charge – or any other charge – was procedurally flawed in any way.  Daniels has not claimed a violation of any regulation that dictates procedures to be followed when the Navy makes a decision about whether a midshipman has committed the offense of consumption of alcohol while on duty; indeed, he does not allege the violation of any

clear rule such that all the Court would need to do would be to "apply[] the facts to the statutory or regulatory standard." *Id.*

The implementation and interpretation of military rules of conduct is entirely committed to the discretion of the service involved. Although Daniels argues that the Navy should have interpreted the instruction as he claims it was habitually applied within his command, he points to no guidelines for the Court to apply that govern whether or how customary practice should be taken into account in Navy disciplinary proceedings. And he does not allege that any such guideline was violated. So this case does not fall within the class of military matters that might be justiciable. *See Murphy*, 993 F.2d at 873 ("A court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion."); *Adkins*, 68 F.3d at 1323 ("In cases in which procedural violations are alleged, the test or standards against which this court measures the military's conduct are inherent: they are the applicable statutes and regulations. In such instances, this court does not improperly exercise any discretion reserved for the military; it merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard.") (internal quotation marks and citations omitted); *Blankenship III v. United States*, 84 Fed. Cl. 479, 485 (2008), citing *Voge v. United States*, 844 F.2d 776, 779–80 (Fed. Cir. 1988) ("[A] court cannot review the military's exercise of discretion in personnel matters."); *Sargisson v. United States*, 913 F.2d 918, 922 (Fed. Cir. 1990) (finding the plaintiff's claim not justiciable because "[n]either [the Air Force Regulations] nor the Letter of Instruction gave any 'tests or standards' by which the Claims Court could determine whether the decision to release Sargisson from active duty was correct.").

What's more, it is clear from a review of the amended complaint and the record materials specifically referenced in the complaint that the standard governing the consumption of alcohol

by first class midshipmen while on duty was not clearly delineated.  The Court would be treading on a discretionary determination by the military merely by trying to define the "practice" that Daniels claims the Navy should have applied to him.  First, Daniels relies upon an April 29, 2011 memorandum found in the Administrative Record in which the Senior Enlisted Leader of his Company confirmed the existence of a policy that adjusted the actual duty hours for first class midshipmen assigned to weekend duty and granted them liberty privileges for the days they were not assigned to watch.  AR 91, referenced in Am. Compl. ¶ 36(h).  But even if this demonstrates, as Daniels contends, that there was a "modification" or "amendment" of the Commandant of Midshipmen Instruction at issue in Daniels's case, the modification described did not extend to Daniels, who was in the second class at the time.  So Daniels has not alleged the violation of the kind of clear rule that this Court could address.

Moreover, Daniels does not point to any writing or training materials that even allegedly authorized his conduct, but he asserts that the prohibitory instruction that was written was ignored "in practice."  *See* Am. Compl. ¶¶ 31, 33–34.  At oral argument, his counsel pointed the Court to statements by other midshipmen that he stated would support Daniels's position.  Transcript (May 10, 2013) ("TR") at 12:24–13:2.  But the amended complaint and plaintiff's own memorandum in opposition to the motion to dismiss also point to the April 2011 memorandum by the company leader, Geddes, who adamantly refutes this contention.  Am. Comp. ¶ 36(h); AR 91.  At bottom, Daniels's claim is that the Navy abused its discretion when it determined that he committed the offense, and that is exactly the type of challenge that this Court is not competent to adjudicate.  *See Miglionico v. United States*, 108 Fed. Cl. 512, 522 (2012) (finding that the Marine Corps Board of Inquiry's decision that the plaintiff had engaged in conduct unbecoming of an officer, based on findings of fact such as his "substandard

performance of duty" and his "failure to demonstrate acceptable qualities of leadership," was "clearly a personnel matter within the military's discretion," which the court was not equipped to review).  Since there are no statutes or regulations to guide either the determination of which standard was the accepted practice, or the determination of when the Navy should apply accepted practice as the standard for a 6K violation, the Court is not equipped to second-guess the Navy's choices.

Thus, if the Court were to keep this case, before it could begin to measure Daniels's conduct against what he alleges was the modified, commonly accepted standard – and even before it could simply order the Navy to do so[7] – the Court would have to engage in a fact-finding exercise to determine what the standard in Daniels's command actually was and when and to whom it applied.  This would involve assessing credibility and making judgments the Court is not qualified to make about which practices make sense in a military academy, what it means to be on weekend duty, what it means to be on watch, and what sorts of distinctions are made between midshipmen of varying levels of seniority.  In other words, this lawsuit invites the Court to wade knee deep into matters of military discipline and command, and into substance

---

[7]     At oral argument, counsel for Daniels conceded that this Court lacked the authority to order the Navy to reinstate Daniels, and he acknowledged that at most, what the Court could do would be to remand the matter to the service and order it to evaluate his conduct against the proper standard. TR 21:25–22:8. But the record reflects, in the materials referenced in the amended complaint, that Daniels presented evidence about the supposed practice in his command at the time he was charged with and convicted of the alcohol violation, and that after he violated his probation, he submitted the arguments presented here through counsel to the Superintendant who recommended the discharge.  Am. Comp. ¶ 41; *see* October 12, 2011 Show Cause for Retention, AR 73–82.  Those materials were transmitted to the Assistant Secretary, along with the Superintendent's recommendation, before the discharge order was entered.  AR 65.  In other words, the record reflects that the Navy took Daniels's claims about the practice at the Academy into account.

rather than procedure.  Since that is what the law on justiciability admonishes federal judges not to do, the Court will decline the invitation and dismiss the case.

## CONCLUSION

Accordingly, the Court will grant defendant's motion to dismiss and deny the alternative motion for summary judgment as moot.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  May 30, 2013